ALBANY,
August, 1806.

Cheviot
v.
Brooks.

## Cheviot *against* Brooks.

B, the master of a ship, took on board some cochineal of C, at *New-Orleans*, to be delivered at *N. York*, and signed bills of lading, one of which he kept, accompanied with the customary proofs of neutral property, without which he refused to take the goods. During the voyage the ship was captured by the *British*. The captors took away all the papers relative to the ship and cargo, which were libelled as *Spanish* property. There were thirty different shippers of goods.—B put in a claim in behalf of the owners, and in his answer to the interrogatories, said that he had signed no bill of lading for the *cochineal*; that it belonged to P, who was a passenger, and had gone to *N. York*, after the capture; but he gave a particular account of the owners and consignees of the other goods. The only part of the cargo that was condemned, was the cochineal; the residue being either acquitted, or detained for further proof. In an action against B, for his negligence and misconduct, in not protecting the property of C, but giving a false account of it, in consequence of which it was condemned, it was held that he was not answerable, for it might be that he had forgotten that he had signed a bill of lading, and his answer did not justify the condemnation, so that it could not be said that he occasioned the loss; there being, besides, no evidence of fraud, or intentional neglect.

THIS was an action of *assumpsit*. The cause was tried at the New-York sittings, the 11th day of December, 1804, before Mr. Justice *Livingston*. The agent of the plaintiff delivered to the defendant, who was master of the ship *Paulina*, at *New-Orleans*, three barrels of cochineal, the property of the plaintiff, to be delivered to him at *New-York*, &c. paying freight, &c. The defendant, on the 15th of *June*, 1799, signed four bills of lading, one of which he retained. The cochineal was stated to be shipped for the account and risk of the plaintiff, and to be delivered to him at *New York*. An invoice of the cochineal, and proof of the ownership, made before the American vice-consul at *New-Orleans*, (there being no consul there) with a consular certificate in the usual form, were delivered at the

same time to the defendant, for the purpose of proving the property in case of necessity. The defendant refused to receive the cochineal, or to sign the bill of lading, until he was furnished with such proof of the property. The *Paulina* sailed from *New-Orleans* for *New-York*, the 18th *June*, and was captured the 16th *July*, by an English privateer, and sent to *New-Providence*, where she arrived the 22d *July*. The captors seized the letter-bags and ship's papers, broke open the trunks in search of papers, and carried all they could find on board of the privateer. The *Paulina* and her cargo were libelled in the vice-admiralty court at *Nassau*, as Spanish property. The defendant put in an answer and claim under oath, in which, after specifying the names of several shippers and consignees of the goods, he says, " that the three barrels of cochineal were " put on board by a Mr. *James Freret*, and that the de- " fendant was to deliver them to a Mr. *Pierce*, who was a " passenger on board, and resided at *New-York*, and since " the arrival of the *Paulina* at *Nassau* had proceeded for " that city. That the claimant did not sign any bill of la- " ding therefor, and cannot take upon himself to say whose " property they are, having merely received them into his " state-room, and was to deliver them to the said passen- " ger, who was to pay him a consideration therefor." It further appeared from the admiralty proceedings t *Nassau*, that the defendant had answered various interrogatories, in which he mentioned the names of the passengers and various particulars concerning them and the goods on board, and of bills of lading; but said nothing of the cochineal, nor of any bill of lading therefor. The court acquitted the *Paulina*, and the greater part of the cargo, being satisfied it was neutral property, and ordered further proof as to some shipments of money claimed as neutral, but condemned the three barrels of *cochineal* as lawful prize, being the only part of the cargo that was condemned. It appeared also that a commission to obtain further proof as to the property, was sent to *New-York*, but nothing was done as to the cochineal.

The declaration contained counts on the bill of lading for not delivering the cochineal, and a special count on the whole case. The defendant pleaded *non assumpsit.*

The judge charged the jury, that it was a question of *good faith* between the parties, and that if they believed that the loss of the plaintiff's property has been occasioned by the fraud or design of the defendant, they ought to find a verdict for the plaintiff; but if they believed that the defendant was innocent of any fraudulent intent, and that the loss had happened through mere forgetfulness, mistake, or unintentional default on his part, they ought to find for the defendant. That as all his papers had been taken from him, it was to be presumed that the defendant had forgotten that he had signed the bills of lading. That it was the duty of the captors, according to the prize-act, to deposit all the papers with the register of the admiralty, where they might and ought to have been examined by the court. That if the papers relative to the cochineal were found in the register's office, they ought to have been considered as evidence in the cause, though not exhibited by either party. So that the misconduct or inattention of the defendant was not the cause of the loss of the property, but rather the misconduct of the captors or the court, in not depositing the papers in the admiralty, or in not referring to them. The jury found a verdict for the defendant. A motion was made to set aside the verdict as against evidence, and for the misdirection of the judge.

*S. Jones*, for the plaintiff. It is the duty of a master, in case of capture, shipwreck, or any other accident or event, to use his best exertions to protect, and preserve the property entrusted to his care. To make him liable in case of loss, it is not necessary that his conduct should be fraudulent. He is considered as a carrier for *hire*, and answerable for ordinary neglect.* He is responsible for every injury and loss that may happen to the goods, and which might have been prevented by human foresight or care.† It is not a question merely of good faith, but of due diligence and care.— Here was an express contract to protect the property; for the defendant refused to receive it, until he was furnished with

* *Jones' Law of Bailments*, 108, 121.
†. *Abbot*, 196.

necessary documents to prove its neutrality.   Yet, in his answer before the court of admiralty, he deliberately swears, that he never signed a bill of lading for the plaintiff's goods. He has thus violated his contract.   It is no excuse for him to say, that he had forgotten that he had  signed  any bill of lading, or that his papers were taken from him.   In all cases of accident, independent of his special contract, the master is considered as the agent of the owner, and is bound to use due diligence and care.  Here he has not only been remiss, negligent, and inactive in the performance of his duty ; but he has been active to the prejudice of the plaintiff.  Had he told the simple truth, that he had forgotten whether he had signed the bill of lading or not, or who was the owner, and had referred to his papers in the hands of the captors, the property might have been liberated, or detained only for  further proof.— But he voluntarily swore to a fact not true,  and thereby furnished the *very ground* of condemnation ; for the property is stated by the  court of admiralty as without any proof whatever  of its character, and under those suspicious circumstances, it could  hardly  escape condemnation.   The plaintiff has suffered  an injury for which  he has no remedy except against the defendant ; and it is important and salutary that such agents should be held  to a strict performance of their duty.

*Hawes* and *Hoffman*, for defendant.   No authority has been cited for the position, which has  been advanced, that it is the duty of the master in  case  of capture, to put in a claim of property.   By the capture, which is a *peril of the sea*, the contract between the master and the consignee, was at an end.   If before that event he was answerable as a carrier for hire,  for ordinary  neglect ;  yet *after* the capture, he can be  considered only  as *common bailee*, and  responsible merely  for *gross neglect*, or a *breach of good faith*.   This responsibility no longer  arises out of the contract.   What has been  the  conduct of the defendant in this case ?  The *Paulina* was a *general ship*, and there were above *thirty* different shippers of goods.   All his papers were taken from him by the captors, and it is not to be presumed that he ever saw them afterwards.   It may, therefore, well be supposed

that he had forgotten that he had signed a bill of lading for the cochineal, as well as the name of the consignee.    There could certainly have been no intentional concealment of the truth ; for he had no possible motive to commit fraud.    He was bound to answer the interrogatories according to his best recollection and belief.    If he has acted according to the best of his ability ; if he has made the best use in his power, of the faculties with which nature has endowed him, it is all that can be required of him.    He has not been guilty of negligence.    It was a defect of memory, a misfortune, for which he is not answerable.    Admitting that he ought to have inquired after, or referred to the papers in the hands of the captors, yet does it appear that the plaintiff has sustained any injury from his neglect to do so ?    To entitle the plaintiff to recover, it ought to be shown, not only that the defendant has been guilty of neglect, but that the plaintiff has suffered a damage in consequence of that neglect.    Did the answer of the defendant, afford any justifiable ground of condemnation to the court of admiralty?    It was a case for further proof.    If the defendant had said positively, that it was the property of an enemy, it would have been a clear case for condemnation ; but not when it is stated to belong to a particular person by name, and a resident in *New-York.*    If the admiralty court illegally condemned the property, the plaintiff should have appealed from the sentence.    The defendant cannot be responsible for their conduct.

TOMPKINS, J. delivered the opinion of the court.    The only question which it is material to determine in this cause, is, whether the jury ought to have been directed to inquire of, and decide upon the negligence of the master.    Fraud and design in the defendant, were submitted to the jury, and their verdict ought to put at rest the question of good faith.

The duty of the defendant, as master, with regard to the protection of the goods, did not, in my opinion, cease with the capture.    He ought, pursuant to his duty, to have contributed his exertions to rescue the property from condemnation, by interposing a claim, and exhibiting in support of it, the documents with which he had been furnished for the protection of his cargo.    If by negligence in the perform-

ance of this duty, the proprietor of the goods sustain dama-ges, the master is, and ought to be responsible to the extent of the amount of such damage*. In this instance, it is unnecessary to inquire, whether the conduct of the master was imprudent or negligent, if the damages sustained did not result from his conduct. The disclosure he made was, undoubtedly, to the best of his recollection, correct, and he was deprived of the means of ascertaining the mistake.— The statement relative to the cochineal, though erroneous, furnished to the court, before whom the proceedings were pending, no legal cause for condemnation. The condemnation of this part of the cargo, therefore, cannot be ascribed to the mistake of the master, but must have proceeded from some other cause. He, therefore, ought not to be responsible in damages for a mistake which, in contemplation of law, could have produced no injury to the plaintiff, and arose from a condemnation, that must be presumed to have been founded on other reasons than those furnished by the facts stated by the master.

But, admitting the contrary position, I am not disposed to impute negligence to the defendant. Admit that he acted in good faith, and to the best recollection he had relative to the property, which the verdict of the jury has established, I am of opinion, no default or negligence is imputable to him. The owners of the cargo were numerous; the documents upon which he relied to establish the ownership, were improperly withheld from him; and his sole dependence, as to the facts necessary to support the claim he had interposed, was on the accuracy of his memory. If this failed, in the peculiar situation in which he was placed, after exerting it in good faith, it would be severe to ascribe a failure in memory as to facts, for the correctness of which the recollection of the master was not relied upon, but written evidence furnished for the purpose, of which he was deprived, to any default or negligence in him. The opinion, therefore, of the court is, that the verdict ought to stand.

Judgment for the defendant.

ALBANY,
August, 1806.

Cheviot
v.
Brooks.

* Jones' law of Bailments, 121.